**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Settlement) (Doc. No. 97) is **DENIED.**

**GLENDALE COLONY and Michael Hofer, Plaintiffs,**

v.

**Dawn CONNELL, Defendant.**

**No. CV–97–126–GF–PGH.**

United States District Court, D. Montana, Great Falls Division.

Nov. 3, 1997.

Lon T. Holden, Jardine, Stephenson, Blewett & Weaver, PC, Great Falls, MT, for plaintiffs.

Channing Hartelius, Hartelius, Ferguson, Baker & Kazda, PC, Great Falls, MT, for defendant.

1. The plaintiffs' pleadings and exhibits refer to the Glendale Colony as a non-Indian organization, located in Cut Bank, Montana. Nevertheless, the plaintiffs have not disputed Connell's contention that the Glendale Colony is located within the exterior boundaries of the Blackfeet Indian Reservation. In addition, there appears to be no dispute that the Glendale Colony possesses a permit to conduct business on the Blackfeet Indian Reservation.

## MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

Plaintiffs, Glendale Colony and Michael Hofer, instituted the above-entitled action for declaratory and injunctive relief, challenging the jurisdiction of the Blackfeet Tribal Court with respect to an underlying tort action prosecuted by the defendant, Dawn Connell. Presently before the court is plaintiffs' request for a preliminary injunction, pursuant to Fed.R.Civ.P. 65, seeking to enjoin Dawn Connell from prosecuting a civil action, i.e., *Dawn Connell v. Glendale Colony and Michael Hofer*, Blackfeet Tribal Court Cause No. 96–CA–53, in Blackfeet Tribal Court. Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is compelled to DENY plaintiffs' request for injunctive relief.

### BACKGROUND

The above-entitled matter has its genesis in an automobile accident which occurred on February 11, 1994, on a portion of U.S. Highway No. 2 in Browning, Montana, within the exterior boundaries of the Blackfeet Indian Reservation. At the time of the accident, Michael Hofer, an employee of the Glendale Colony,[1] was returning to the Glendale Colony after delivering eggs to the IGA store in Bowning, Montana. Hofer's vehicle collided with a vehicle driven by Dawn Connell, a resident of the Blackfeet Indian Reservation, and an enrolled member of the Blackfeet Indian Tribe. On February 5, 1996, Dawn Connell filed suit against Michael Hofer and Glendale Colony in the Blackfeet Tribal Court, seeking compensatory damages based upon the purported negligence of Michael Hofer. The defendants entered an appearance in Tribal Court, and subse-

quently moved the court to dismiss the action for lack of subject matter jurisdiction. On October 22, 1997, the Tribal Court denied the motion to dismiss, and ordered the matter proceed to trial on November 4, 1997.

On October 28, 1997, Glendale Colony and Michael Hofer instituted the above-entitled action for declaratory relief, challenging the jurisdiction of the Blackfeet Tribal Court in the underlying tort action. In addition, Glendale Colony and Michael Hofer request the court issue a preliminary injunction, pursuant to Fed.R.Civ.P. 65, enjoining Dawn Connell from proceeding to trial as scheduled on November 4, 1997. Plaintiffs invoke the federal question jurisdiction of this court, pursuant to 28 U.S.C. § 1331.

## DISCUSSION

■ The traditional equitable criteria for obtaining preliminary injunctive relief include: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) advancement of the public interest. *See, Los Angeles Memorial Coliseum Com'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980) (citations omitted). Accordingly, a party is entitled to preliminary injunctive relief provided it demonstrates "probable success on the merits" and a "possibility of irreparable injury," or if it demonstrates "a fair chance of success on the merits (*i.e.,* serious questions are raised)" and the "balance of hardships tips sharply in their favor." *Confederated Tribes & Bands of Yakama v. Baldrige,* 898 F.Supp. 1477, 1483 (W.D.Wash.1995), *quoting, State of Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1389 (9th Cir. 1988).

In the case *sub judice,* Glendale Colony and Michael Hofer assert injunctive relief is warranted because they have demonstrated "probable success on the merits" with respect to their challenge to the jurisdiction of the Blackfeet Tribal Court. In response, Dawn Connell asserts plaintiffs' request for injunctive relief is appropriately denied, given plaintiffs' failure to exhaust their remedies in the Blackfeet Tribal Court.

■ The question of whether an Indian Tribe retains the authority to compel a non-Indian to submit to the jurisdiction of a tribal court presents a question of federal law, properly determined by the federal courts; the final arbiters of federal law. *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 852, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).[2] Nonetheless, principles of comity, predicated upon the well-recognized Congressional policy of promoting tribal self-government and self-determination, compelled the Court in *National Farmers Union* to an-

**2.** *National Farmers Union* involved a suit brought in Crow Tribal Court by Leroy Sage, a Crow Indian minor, against a Montana school district for injuries suffered when he was struck by a motorcycle on school grounds owned by the State of Montana within the boundaries of the Crow Indian Reservation. The Supreme Court expressly declined the opportunity to address tribal courts' civil jurisdiction over reservation-based causes of action involving Indian plaintiffs and non-Indian defendants. *National Farmers Union,* 471 U.S. at 854, 105 S.Ct. 2447. Rather, the Court held the question of whether the tribe's retained sovereignty included the power to compel a non-Indian to submit to the jurisdiction of its courts must be answered by federal law, which may have divested the tribe of such power, and therefore was a federal question included within the jurisdiction of the federal district courts. *Id.* at 852–53, 105 S.Ct. 2447. The Court did not, however, address the issue of whether the Crow Tribe had jurisdiction over the underlying tort claim. Rather, the Court left the issue for a separate inquiry, stating:

> [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.

*Id.* at 855–56, 105 S.Ct. 2447.

nounce a rule of exhaustion, which requires tribal court remedies be exhausted before the question of tribal court jurisdiction is addressed by the federal courts. 471 U.S. at 856–57, 105 S.Ct. 2447. The Court concluded proper respect for tribal legal institutions required the federal courts to afford these tribunals a full opportunity to consider the issues before them and to rectify any errors. 471 U.S. at 857, 105 S.Ct. 2447. Unconditional access to the federal forum, the Court reasoned, would contravene the federal policy supporting tribal self-government by placing the federal courts "in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." *Iowa Mutual Ins. Co. v. La-Plante*, 480 U.S. 9, 16, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

Accordingly, the Supreme Court and the Ninth Circuit Court of Appeals have held non-Indian defendants must exhaust tribal court remedies before seeking relief in federal court, even where defendants allege that proceedings in tribal court exceed tribal sovereign jurisdiction. *Burlington Northern R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1244 (9th Cir.1991), citing, *National Farmers Union, supra*, 471 U.S. at 856–57, 105 S.Ct. 2447; *Iowa Mutual Ins. Co., supra*, 480 U.S. at 16, 107 S.Ct. 971; and *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th Cir.1989). Nevertheless, mandatory deference does not follow automatically from an assertion of tribal court jurisdiction.[3] The Supreme Court, in *Strate v. A–1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), stated:

> When, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana's* main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct. As in criminal proceedings, state or federal courts will be the only forums competent to adjudicate those disputes. (citation omitted). Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable exhaustion requirement, ... must give way, for it would serve no purpose other than delay.

*Strate, supra*, 117 S.Ct. at 1416, n. 14.

The controversy in *Strate* arose from a motor vehicle accident involving two non-tribal members on a North Dakota state highway within the Fort Berthold Indian Reservation. The Supreme Court ultimately held that, absent a treaty or statute, the tribal court lacked jurisdiction to adjudicate a dispute between non-members of the tribe arising out of an automobile accident on a state highway. *Strate*, 117 S.Ct. at 1407–08. Relying principally upon *Montana v. U.S.*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the Court expressly noted that with respect to lands over which the tribe had ceded sovereign authority, tribal jurisdiction is substantially limited. *Id.* at 1413.

> *Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's politi-

---

**3.** For example, the Supreme Court, in *National Farmers Union*, articulated three exceptions to the exhaustion requirement:

We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' ... or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.
*National Farmers Union, supra*, 471 U.S. at 856 n. 21, 105 S.Ct. 2447.

cal integrity, economic security, health, or welfare.

*Strate, supra,* 117 S.Ct. at 1409–10.

In a subsequent decision, the Ninth Circuit Court of Appeals, in *Wilson v. Marchington,* 127 F.3d 805 (9th Cir.1997), held the Blackfeet Tribal Court did not have subject matter jurisdiction over an action involving two non-member defendants, which arose from a motor vehicle accident which occurred within the exterior boundaries of the Blackfeet Indian Reservation.[4] In so holding, the court rejected the argument that a traffic accident injuring a tribal member sufficiently affects the economic security, political integrity, or the health and welfare of the tribe, thereby satisfying the second *Montana* exception.

> Undoubtedly, those who drive carelessly on a public highway running through a reservation endanger all in the vicinity, and surely jeopardize the safety of tribal members. But if *Montana'*s second exception requires no more, the exception would severely shrink the rule.

*Wilson, supra,* at 814, *quoting, Strate, supra,* 117 S.Ct. at 1415.

 In the case *sub judice,* the plaintiffs, relying upon *Strate* and *Wilson,* assert they should not be forced to exhaust tribal court remedies because the Blackfeet Tribal Court clearly lacks jurisdiction over the underlying tort action. Plaintiffs' argument, however, ignores the fact that the present action is factually distinguishable from *Strate* and *Wilson.*

Michael Hofer, unlike the defendants in either *Wilson* or *Strate,* was not simply traveling through a reservation on a public highway en route to a destination off the reservation. Rather, Michael Hofer is a resident of the Glendale Colony, which is located within the exterior boundaries of the Blackfeet Indian Reservation. Consequently, Michael Hofer and the Glendale Colony have a continuous and ongoing presence on the Blackfeet Indian Reservation. In addition, the record reflects the Glendale Colony holds a permit to conduct business on the Blackfeet Indian Reservation and, in fact, Michael Hofer was arguably in the course and scope of that business at the time of the underlying accident.

Under the facts presented, the court is unable to conclude the second *Montana* exception would not apply to the underlying tort action. Specifically, the court concludes a question exists as to whether the conduct at issue threatens or has some direct effect on the political integrity, economic security, health, or welfare of the Blackfeet Tribe. *See, Montana v. United States, supra,* 450 U.S. at 565–566, 101 S.Ct. 1245 ("A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."). Given that uncertainty, the court concludes it would be illogical not to apply the exhaustion requirement, which is designed to allow tribal courts to address, in the first instance, the extent of their jurisdiction.

*National Farmers Union/Iowa Mutual* mandate that the Blackfeet Tribal Court, the forum whose jurisdiction is being challenged, must be afforded the first opportunity to evaluate the factual and legal bases for the challenge. *National Farmers Union Ins. Cos. v. Crow Tribe of Indians, supra,* 471 U.S. at 856, 105 S.Ct. 2557. Consequently, the court, cognizant of the pendency of proceedings before the Blackfeet Tribal Court, deems it appropriate to

---

4. In *Wilson,* the plaintiff, Mary Jane Wilson, an enrolled member of the Blackfeet Indian Tribe, filed suit in the Blackfeet Tribal Court, seeking compensatory and punitive damages based upon the purported negligence of defendants Thomas David Marchington and Inland Empire Shows, Inc. The action had its genesis in an automobile accident which occurred east of Browning, Montana, when a semi-tractor trailer driven by Marchington, who was traveling through the Blackfeet Indian Reservation on U.S. Highway 2, collided with Wilson's vehicle.

abstain from proceeding in the present action until that point in time when the parties have exhausted all remedies available to them under the laws of the Blackfeet Tribe of Indians.

Therefore, from the record before it and for the reasons set forth herein, the court concludes the application for preliminary injunction presented by the plaintiffs, Michael Hofer and Glendale Colony, be, and the same hereby is, DENIED.